## CLARA ENGELBACH ET AL. v. JOHN SIMPSON.

### No. 1380.

**1.  Vendor and Purchaser—Release of Lien.**

When the vendor of real estate retains an express lien for purchase money and the consequent legal title, the duty rests upon him, when the debt is finally discharged, to execute and deliver a release, if at that time he is the owner of the lien.

**2.  Same—Tender on Condition.**

A tender of the amount of purchase money finally due made upon condition that a release of the lien be executed is valid.

**3.  Same—Release by Attorney.**

Release must be executed by the vendor if he still retains the title, and a release by his attorney holding the note for collection is not sufficient, unless authority is shown for him to execute such release.

**4.  Same—Fact Case.**

The vendee of real estate on which the vendor had retained an express lien for the security of a purchase money note tendered the amount of the note and interest at maturity conditioned on receiving a release by vendor of the lien.  A release by the vendor's attorney holding the note for collection was offered as a compliance and declined.  On suit upon the note and foreclosure of the lien, the vendee having kept his tender good and paid the amount due at maturity into court, the plaintiff was properly held liable for the costs of suit.

APPEAL from Lampasas.    Tried below before Hon. W. A. BLACKBURN.

*A. Chesley,* for appellants.—Where a deed, with covenants of warranty of title is made, but describing unpaid purchase money notes, and reserv-

ing a lien to secure their payment, the legal title passes ipso facto, upon a payment of such notes, and perfects the title of the purchaser. Russell v. Kirkbride, 62 Texas, 457; Stitzle v. Evans, 74 Texas, 598, 599. See opinion in this last case, for a distinction between a bond for title or a mere agreement to convey where some further act upon the part of the vendor is contemplated, and a case where a deed is given in the first instance with vendor's lien specially retained. Also see Ogburn v. Whitlow, 80 Texas, 240, where a warranty deed with vendor's lien retained is treated as an executed contract. Also see McCamly v. Waterhouse, 80 Texas, 340; Peters v. Clements, 46 Texas, 122, and Masterson v. Cohen, 46 Texas, 520.

2. The right of the vendee of land holding under a warranty deed, reciting unpaid purchase money notes, and that the vendor's lien is retained, to demand a written release of the lien upon the payment of the notes, can only be sustained upon the theory that the legal title still remains in the vendor after the notes are paid, which is not the law. See authorities cited under first sub-proposition, and especially McCamly v. Waterhouse, supra, where without holding that the vendee could legally demand a release of any kind, the question not being before the court, it was held that a release of the lien by a transferee of the note who did not hold the legal title was sufficient. 80 Texas, 342, 343.

As a corrollary to the above sub-propositions, arise the following:

a. That upon the payment of the purchase money notes, neither the holder of the notes nor the vendor have any further interest in the land and there is nothing for them to release, the title, both legal and equitable, being in the vendee.

b. That the possession by the vendee of the paid up notes that are recited in the deed is ample evidence of their payment, that the lien is discharged, and that he, so far as the vendor is concerned, has a perfect title to the land.

3. In the absence of an agreement to do so, the vendor, under the circumstances of this case, is under no legal obligations to furnish the vendee and maker of the notes any further evidence of their payment than the surrender to him of their custody; and if he does so, it is for the accommodation of the maker, and should be done at his expense.

4. A receipt describing vendor's lien notes and showing their payment is ample evidence that the lien is discharged; and an attorney at law holding such notes for collection as such attorney, is by virtue thereof authorized to receive payment and execute a receipt showing the payment, without producing written authority from his client, and such receipt is binding on the client.

Same authorities as above. Also Weeks on Attorneys at Law, sections 216, 218 and 232.

5. The authority of an attorney at law having possession of a past due promissory note due a third party to collect the same, is prima facie presumed, and where such payment is made in good faith to such attorney, the authority to collect and receipt for the payment would, it is sub-

mitted, become conclusive as against the owner of the note, and all other innocent third parties.

*W. B. Abney,* for appellee.—1.  Appellee had a right to demand a release from appellants of the vendor's lien as a condition attached to his tender of payment, and the tender as made and renewed in this suit relieved appellee of all interest and costs after tender made.  Brock v. Jones, 16 Texas, 467; Flake v. Nuse, 51 Texas, 98; 25 Am. & Eng. Ency. Law, 914; Wheelock v. Tanner, 39 N. Y., 481; Brink v. Freoff, 40 Mich., 614;  Lamb v. Jeffry, 41 Mich., 719;  Johnson v. Cranage, 45 Mich., 14; Saunders v. Frost, 5 Pick. (Mass.), 259;  Halpin v. Phoenix Ins. Co., 118 N. Y., 165;  Salinas v. Ellis, 26 S. C., 337; Loughborough v. McNevin, 74 Cal., 250.

2.  Every vendor of lands is bound to tender a proper deed conveying and relinquishing all title and liens held by him, when the vendee tenders the full consideration for the purchase of such land.  Patterson v. Goodrich, 3 Texas, 336;  Walling v. Kinnard, 10 Texas, 511 and 512;  Gober v. Hart, 36 Texas, 139;  Vardeman v. Lawson, 17 Texas, 11.

FISHER, CHIEF JUSTICE.—This is a suit by the appellants against appellee Simpson upon a promissory note for $309.06, dated July 2, 1892, and due two years from date with ten per cent interest payable annually, and to foreclose a vendor's lien upon certain land situated in Lampasas County which was conveyed to appellee by appellant, Clara Engelbach, by deed with covenants of general warranty in which a vendor's lien was expressly retained to secure the payment of the note sued on, and also the payment of another note which has been paid.  The court below rendered judgment in favor of appellants for the principal of said note and interest up to maturity, and as that amount was at maturity tendered to them, and as the tender was kept alive by a deposit of the amount and by bringing that amount into court and depositing it with the clerk, the court decreed that the amount be turned over and paid to appellants in full satisfaction of their debt and lien, and that the vendor's lien retained by said deed and note be cancelled, and refused to render judgment in appellants' favor for the amount of interest accrued after the tender was made, and also rendered judgment against appellants for the costs of suit.  The facts briefly stated are as follows: The note sued on was executed and delivered by appellee as alleged in the petition, and the consideration thereof was for a part of the purchase price of a tract of land conveyed by appellant, Clara Engelbach, to appellee.  At the time of the sale a warranty deed was executed which retained the vendor's lien for the unpaid purchase money.  The note sued on was for all that was due as the purchase price of said land.  There were other notes executed at the time of the conveyance, but they were paid off before this suit was filed.  The note stated no place of payment, and was due July 5, 1894.  The note sued on was dated July 2, 1892, and was payable to Clara Matthaei or order, with interest at 10 per cent from date, payable

annually.   Clara Matthaei is now appellant Clara Engelbach.   The deed
for said land executed at the time the notes were delivered in which the
vendor's lien was expressly retained, was duly recorded in Lampasas
County, Texas.

On July 3, 1894, defendant deposited with the First National Bank of
Lampasas in Lampasas County a sufficient amount of money to pay said
note, with instructions to the cashier to pay said note when presented
and accompanied by a proper release of the vendor's lien—the sufficiency
of the release tendered to be determined by defendant's attorney, W. B.
Abney, of Lampasas.

On July 9, 1894, said First National Bank of Lampasas received said
note for collection through the First National Bank of Bellville, and
promptly advised said First National Bank of Bellville, by letter, that it
held the money on deposit to take up the note when a proper release of
the vendor's lien was tendered by plaintiffs.

Said First National Bank of Lampasas received receipt and release
hereto attached, executed by A. Chesley, by due course of mail on or about
July 14, 1894, and submitted same promptly to said W. B. Abney, who
advised against its acceptance and the payment of. the note upon the
ground that it was unaccompanied by power of attorney or other instru-
ment of writing from plaintiffs to said A. Chesley authorizing him to
execute the release, and demanded that such power of attorney be fur-
nished for record, or if not done, then that a release of the lien direct
from plaintiffs themselves, properly acknowledged, be furnished and
ready for delivery to defendant upon payment of the note, of which objec-
tions and requirements plaintiffs were duly notified by due course of mail.
Whereupon said A. Chesley, as attorney for plaintiffs, proposed to furnish
a release of the lien direct from plaintiffs themselves, provided that de-
fendant would pay $10 to cover expenses and charges for the same, which
defendant declined to do, upon the ground that it was the duty of plain-
tiffs to furnish said release at their own expense, which plaintiffs de-
clined to do.   It is further agreed that upon maturity of the other note
executed by the defendant to said Clará Matthaei, which was due on July
2, 1893, that same was forwarded by plaintiffs to the First National
Bank of Lampasas, Texas, and the same was paid by defendant to said
First National Bank of Lampasas.

The receipt and release, referred to in the sixth clause of the agree-
ment and attached thereto, was also read in evidence, and was dated July
13, 1894, and recited the fact of the sale of the land by said Clara Mat-
thaei to defendant, the execution of two notes therefor of $309.06 each,
due respectively in twelve and twenty-four months, and that the first
maturing had been transferred to W. A. Matthaei, and that the vendor's
lien upon the land had been retained in the notes, and that both notes
had been paid, and then formally releasing all title and claim of said
Clara Engelbach and W. A. Matthaei in the land, closing as follows:
"This further shows that I, as an attorney at law, held both of said notes
for collection, and both of them have been paid to me as such attorney,

thereby extinguishing said lien, and this instrument is intended to evidence the fact of such payment," which was signed by said Chesley as attorney for the parties, and acknowledged before a notary public. It was also proved upon the trial that said A. Chesley was an attorney at law, and as such, held both of said notes for collection, and that he forwarded the note here sued upon through the First National Bank of Bellville to the First National Bank of Lampasas for payment. Also, that plaintiffs were residents of the State of Indiana, and were not in this State at the time the release was demanded. It was also proved that the $340, paid by defendant into the First National Bank of Lampasas as a tender of payment of the note sued upon, remained with the bank until after the filing of the answer of defendant.

*Opinion.*—Upon this state of facts the court below ruled that the maker of the note was not required to pay off same unless the vendor executed and delivered at his expense a written release of the vendor's lien, and that a tender of the amount of principal and interest due at maturity upon condition that such release should be executed and delivered, was a condition which the vendee could impose, and that a failure and refusal of the vendor to comply with the terms of the tender would defeat her right to recover the costs of suit and interest after that time, and that the tender of a release by the attorney of appellant was not sufficient.

The points raised are, may a vendee exact of the holder of a vendor's lien note as a condition of payment a release of the vendor's lien, when the same is expressly retained in the conveyance under which he holds, and is a release executed and tendered by one not shown to have authority other than exists in an attorney representing his client, sufficient? When a conveyance is executed and an express lien is retained, the legal title remains in the vendor until it is discharged. McKelvain v. Allen, 58 Texas, 387; Lundy v. Pierson, 67 Texas, 237; Hamblen v. Folts, 70 Texas, 135; McPherson v. Johnson, 69 Texas, 487; Kauffman v. Brown, 83 Texas, 45; Willis v. Sommerville, 3 Texas Civ. App., 509; Foster v. Andrews, 4 Texas Civ. App., 429. It is true that a payment discharges a vendor's lien, and a delivery of the note may be evidence that the debt and lien are extinguished, and when considered in connection with the deed conveying the land in which the lien is retained, will be evidence that the vendor has parted with all title, and that the superior title is in the vendee. But, as said in Halfin v. Winkleman, 83 Texas, 165, a possession of a vendor's lien note by the vendee is not conclusive evidence of payment, and that the lien has been satisfied, and the presumption and inference that arises in such a case may be rebutted. To the same effect is Flower v. Elwood, 66 Ill., 439. Our laws concerning conveyances and those embraced within the statute of frauds, in effect require that the grantor must execute the instruments that operate as conveyances, and an acceptance by the grantee and a delivery to him is usually sufficient to pass the title in the manner intended by the instruments, but there

is no statute law that requires the execution of a release of lien.  Whatever doubt may have once existed as to whose duty it was to execute a conveyance upon the sale of land, it has been quieted since the decision made in the case of Walling v. Kinnard, 10 Texas, 509, as it is there held that such duty rests upon the grantor with the burden of its expense. When we take into consideration that the legal title is expressly retained in the vendor, and that the purpose to be accomplished by the contract of the parties as well as by reason of the rules of law that apply to the conveyance in whatever form it may be, that upon payment of the entire consideration the superior title shall immediately vest in the vendee, and that all interest shall pass out of the vendor, and that the object of the law is to place the evidence of this fact in some enduring and lasting form, and not let it depend solely upon the uncertainty of human recollection, we fail to perceive why the rule that rests the burden of the execution of the conveyance upon the grantor will not with equal force apply to the vendor upon the discharge of the superior title that he in his conveyance has expressly retained.  The purpose of the law is that conveyances of real estate shall be in writing, so that the entire rights of the parties may be disclosed and ascertained by reference to the instruments under which they claim; and where rights of real estate are sought to be passed, it is not the policy of the law that they may rest in parol. And with these rules in view, reason would suggest that it is as important to the interest of the parties, and those that may deal with the title to the land, that one who as vendor retains a title shall, when it is discharged, release it, as it is in the first instance that he shall convey it.  Whatever may be the theory of the law that payment extinguishes the lien, the fact nevertheless exists that in this practical and utilitarian age, when dealings between men in a business way are based not upon occult but obvious reasons, a title with the evidence of superiority displayed in the vendor would be of less practical utility than when such was not the case, in an effort to dispose of it by the vendee.  And in such a case, when we consider the rule announced in Halfin v. Winkleman, supra, it is believed that the superior title apparently remaining in the vendor, although in fact discharged, would be a cloud upon the title of the vendee, and that he could maintain his action to remove it.  Actions of this character are allowed, not for the reason that the outstanding title is superior, but upon the ground that they shadow the real title and thereby tend to effect its efficiency, and for this reason courts of equity will remove it as a cloud upon the real title.   "Equity interferes to remove clouds upon titles because they embarrass the owner of the property clouded and tend to impede his free sale and disposition of it."

The remedy provided in this class of cases, as well as of others, is upon the theory that the plaintiff has the right to insist upon his demand, and, if right, that the court shall decree him the protection adequate in such cases.   An admission of this right is based not alone upon the permissive privilege of the defendant to do the thing demanded if he so desires, but the action against him rests upon his duty to do the thing and the

consequent right and power of the court to enforce its performance. If the court has the power in such a case to remove the cloud, it may act directly upon the person of the defendant and require him to execute a release, as is the usual practice in courts of equity, or it may decree title in the plaintiff with a cancellation of the apparent outstanding title. As said, the remedy allowed in these cases is upon the theory that the duty rests upon the defendant to do and perform the things demanded, and the plaintiff having the right to demand that the thing shall be done, the defendant has no right to refuse and base rights upon this refusal. He should have previously performed the things that rested upon him as a duty, without forcing the plaintiff to resort to a court of equity to compel performance. In Brown v. Stewart, 56 Md., 421, after a discharge of a mortgage, it was held that its outstanding without a release was a cloud upon the title of the mortgagor, and equity would compel the mortgagee to remove the cloud by executing a release.

Redmond v. Packenham, 66 Ill., 437, was a case in which the mortgage debt was paid without a release of the mortgage, and after that time the executor of the mortgage sold the land to the defendant. The court held such sale void, it being after the debt and lien were extinguished. The court say: "The mortgage debt being paid, it was the duty of the mortgagee to release to the mortgagor the legal title, and it was thenceforth held by the mortgagee, or those claiming under the mortgage, but as a trust for the mortgagor or his heirs to re-convey to them. We think a court of equity may properly exercise jurisdiction to set aside the deed to Packenham (defendant) and compel a re-conveyance of the legal title and thus remove an apparent cloud upon the complainant's title. Herein the remedy at law would fail to be adequate. The case comes, too, under an old head of equity, that when a deed or other instrument has by a satisfaction or payment become functus officio, and yet its existence may be a cloud upon the title of the other party, a court of equity will interpose and decree a delivery and cancellation of the instrument, and compel a reconveyance of the property if necessary. And to the same effect is the case of Frederick v. Ewrig, 82 Ill., 363.

In Strafford v. Welch, 59 N. H., 46, it is held that after tender or payment, a maker of a note may maintain a suit in equity against the holder for possession. In Smith v. Van Campen, 40 Iowa, 411, the owner of certain real estate under an agreement to sell same had executed a bond for a deed and received the purchase money notes for the deferred payments, and after a time the parties by mutual agreement rescinded the contract and the notes were released, but they were never surrendered, it was held that the owner was entitled to a decree quieting his title. In Kent v. Church of St. Michael, 136 N. Y., 10 (18 Law. Rep. Ann., 331), it is held that when the vendor retains the record title, equity will compel the execution of a new deed upon the loss or destruction of the old one.

Allen v. Waldo, 47 Mich., 516, holds that a bill will lie to establish an unrecorded deed which has been destroyed by the grantor, the record title

being in him.   A deed held in escrow, but accidentally placed upon record without being delivered, is a cloud upon title.  Stanley v. Valentine, 79 Ill., 544.   A deed executed but never delivered constitutes a cloud.   Brewton v. Smith, 28 Ga., 442; Eckman v. Eckman, 55 Pa. St., 269; Pratt v. Pond, 5 Allen, 59.  A void sale of the homestead may be removed as a cloud.   Williams v. Williams, 7 Baxter, 116.   Vardeman v. Lawson, 17 Texas, 18, was a case in which a bond for title was executed by the grantor and it was complied with by the vendee, who paid the purchase money agreed upon.   The court say that the superior title, by reason of these facts, was in the vendee, and that no further conveyance was necessary as between the vendor and vendee in order to place the superior title in the latter, but that as the legal title was retained by the vendor, it was a cloud upon the title of the vendee which they had the right to remove.

The rule to be deduced from these authorities and others in the same line is, that any claim or title which is exhibited, and which, if asserted, would require evidence to remove it, is a cloud upon title.   Lick v. Ray, 43 Cal., 83.  A reading of these cases, as well as others where the remedy to remove cloud has been granted and decrees rendered to that end, leads to the inference that in all these cases the costs were taxed against the defendants.   This being true, they but emphasize the principle that where a duty rests upon another, he must perform it, burdened with the expense of its execution.   They also determine that one who holds an apparent right in the estate may be required to surrender it to the true owner, although, in fact, such apparent title may be valueless, and that the right to demand on the one hand and the duty to perform on the other is the foundation upon which rests the rights of a plaintiff to remove cloud, and that it is solely by reason of the duty resting upon the defendant to do the thing demanded that a court of equity will take hold of the case; for the court will not interfere and grant relief when the act demanded is permissible, and may or may not be performed as the will and pleasure of the defendant may move him.

A court will not lend its aid to the performance of obligations unless it is based upon a corresponding duty and legal liability to perform, and when the law in affording protection to the plaintiff will require the thing to be done, this necessarily implies that the duty in the first instance rested upon the defendant to do what may be required of him without forcing a plaintiff to a resort to the courts.   Hence, we repeat that the duty rests as a legal obligation upon a defendant to remove the cloud that his conduct has occasioned, or that exists by reason of rights apparently existing in him to the ostensible though unreal prejudice of the title of the plaintiff.

This brings us to the question whether a tender made upon condition that a release of the vendor's lien be delivered upon final payment of the purchase money was valid.   The general rule and the one most frequently observed and enforced is, that a tender, to be valid, must be unconditional.   This rule, like all others, has its exceptions which are as import-

ant as the rule itself, and which courts often lose sight of when passing upon the validity of a tender.   One is that a tender made upon conditions that the debtor has a right to impose for his own protection, is valid. In Johnson v. Cranage, 45 Mich., 18, a tender made upon condition that certain property should be delivered which the debtor was entitled to, was held valid.   In Wheelock v. Tanner, 39 N. Y., 486, where the property was encumbered by mortgage, and the tender was made upon condition that the mortgage be discharged, it was held good, and the rule was announced that a tender upon conditions that the debtor has the right to impose and to which the other has no right to object is valid.

The case of Mankel v. Belscamper, 84 Wis., 218, in some of its features, is much like the case at bar.   There the tender was made upon condition that a release or reconveyance be executed and delivered.   It was held that the mortgagor was entitled to a release, and that the tender upon such a condition was valid, and also held that as the tender, as in this case, was originally good and kept in force, it stopped the interest and entitled the mortgagor to costs.

In Strafford v. Welch, 59 N. H., 46, it is held that a tender of the amount due on a note upon condition that it shall be given up is valid. In Loughborough v. McNevin, 5 Am. St. Rep. (74 Cal., 250), a tender of the amount due to redeem a pledge was made upon condition that it be surrendered to the pledgor.   It was held good.   Halpin v. Phoenix Ins. Co., 118 N. Y., 175, is an instructive case upon this subject.   There a tender was made upon condition that a release of the mortgage lien be executed.   It was held to be a good tender.   After reviewing the authorities the court declares the rule to be that if the party making the tender had a right to insist, as a condition of payment, that the party to whom the tender was made do the things demanded, for that reason coupling such conditions to the acceptance of the tender did not destroy its effect.   In effect, a similar ruling was made in Baily v. County of Buchanan, 6 Law. Rep. Ann., 563.

In Brock v. Jones, 16 Texas, 467, the court says: "As to the second objection, that the demand of a receipt made the tender bad as conditioned, it would seem from the authorities cited, especially Wood v. Hitchcock, 20 Wendell, 47, that the demand of a receipt, under any circumstances, although there might be no dispute about the amount, would vitiate an offer to pay as a tender.   But this certainly can not be the true rule.   There must be unsoundness in a principle which would require the payment of money without a receipt as evidence of such fact, or which would deprive a party of a legal right or benefit from taking such receipt, or even demanding it or intimating that it was expected. Such a course of dealing would be very unsafe.   It would be just as reasonable to require that no witness should be present, as they might subsequently prove the transaction.

The opinions in Richardson v. Jackson, 8 Mees. & W., 298, show the unsoundness of the rule.   See also 8 Dowl., 442;  Bowen v. Owen, 11 Q. B., 131; Chitty, Cont., 694.   No doubt the demand of a receipt would

vitiate the act as a tender where a debtor offered a particular sum in discharge of a demand which was unliquidated and unsettled between the parties. No point is here made that the tender was invalid by reason of the fact that the release demanded was to be submitted to the attorney of appellee for his approval, but the objection to the judgment seems to be based principally upon the grounds that the vendor was not required to execute a release, and therefore a demand of one was unauthorized and consequently defeated the tender, but if he was so required, one executed by the attorney of appellant was sufficient. All that was intended evidently when the tender was made, was that the vendor should deliver a valid release of his lien, and that branch of the condition that provided for its inspection and approval by the attorney of appellee was not regarded as an obstacle in the way of accepting the tender, but the refusal was based upon other grounds. The appellant has not treated this branch of the conditions made in the tender as important in order to defeat it, and such being the case, we do not feel called upon to give this question more importance than has been done by appellant.

It will be observed that here the tender was continued and kept up, and the amount due was finally profert in curia, and it was disposed of by the judgment of the court awarding it to the appellants. In these circumstances, the tender stopped the subsequent interest and carried with it the cost of suit. Brock v. Jones, 16 Texas, 468; Fisk v. Holden, 17 Texas, 414; Riley v. McNamara, 83 Texas, 14; 25 Am. & Eng. Encycl. Law, 926.

The question remains, was the proffer of a release by the attorney of appellants sufficient? No authority or power was shown in the attorney to bind his client by a release, except what is by law implied from that relationship. An attorney has the authority to receive payment of a claim of his client in his hands for collection, and may execute upon payment thereof a receipt. But when the matter relates to a release or discharge of an interest or title in real estate, when such interest is expressly retained by the vendor, we believe that the rule of law that requires him to execute the conveyance in the first instance pari ratione requires that he execute a discharge of his title; and that in order to delegate this authority in such a case, it must be in the manner usual and effectual in cases in which he would authorize another to transfer his real estate. Simply the authority of an attorney to receive payment of an amount that may be due his client as the consideration for the purchase of real estate in a case in which no conveyance had been executed, would not imply the power in him to execute and deliver a deed, when such payment was made, conveying the estate.

The foregoing decision disposes of the questions raised, and from it three rulings follow: (1) When the vendor expressly retains his lien and the consequent legal title, the duty rests upon him, when it is finally discharged, to execute and deliver a release, if at the time he is the owner of the lien. (2) A tender made of the amount finally due, and kept up

upon condition that a release be executed and delivered, is valid.    (3) Such a release must be executed by the vendor if he still retains the title, and simply a release by an attorney is not sufficient unless authority is shown for him to act in this respect.

We do not desire to be understood as holding that these rules would or would not apply in the case of an ordinary mortgage executed to secure a debt by a mortgagor with the title, for in a case like that we express no opinion in advance, but the rulings we make are intended to apply to the identical case before us.

Judgment of the court below is affirmed.

*Affirmed.*

Delivered January 8, 1896.